in said former case. The briefs are carbon copies.

The machine for whose operation, without display of the tax receipt for the current year, appellant is here charged, vends, if anything, amusement—of what kind or character we are not informed by testimony. Every game of chance, every gaming table or bank, the keeping of which is made penal and in many instances a felony by the terms of our statute, vends amusement, as we understand it; the difference, if any, between those games and the one before us lying only in the fact that here to initiate the game a coin is dropped into a slot and a lever pulled. We see no reason at all why the Legislature may not in its wisdom and discretion discern much difference in kind and class between a sanitary drinking cup vending machine and a machine whose sole contribution to the operator is a chance that a marble propelled by springs may bound from these pins to those pins in its journey to some one of the several possible resting places provided. Such occupation contributes nothing to the health, safety, comfort, convenience or well-being of the public. We are unable to agree with appellant's contentions.

The judgment remanding appellant is affirmed.

### On Motion for Rehearing.

MORROW, Presiding Judge.

For the reasons stated at some length in Ex parte Joe Day, 76 S.W.(2d) 1060, opinion on motion for rehearing this day handed down, and entertaining the same views as to the right of the Legislature to conclude there are reasonable and satisfactory distinctions between the machine claimed to have been operated by appellant in this case and other machines enumerated in House Bill 174, supra, the motion for rehearing in this case will be overruled.

### HAGAR et ux. v. McCASKILL et al.
### No. 11480.

Court of Civil Appeals of Texas. Dallas.

Nov. 3, 1934.

Mayo W. Neyland and Sam D. Stinson, both of Greenville, for plaintiffs in error.

R. H. Templeton, of Wellington, for defendants in error.

LOONEY, Justice.

J. M. Hagar and wife brought this suit against H. M. McCaskill, R. E. Graham, and the City National Bank of Wellington, Tex., for the cancellation of certain instruments affecting the title to a parcel of land situated in Royse City, Rockwall county, Tex., alleged to be the homestead of plaintiffs, and to remove the instruments as clouds upon their title. The bank filed a disclaimer.

Plaintiffs' allegations are to this effect: That their son, J. T. Hagar, was indebted to the bank at Wellington, and to J. A. Richardson, from whom the son rented land, in the aggregate sum of $1,050, for the payment of which defendants McCaskill and Graham had become obligated as sureties; that McCaskill prevailed upon plaintiffs to execute or become parties to certain written instruments, purportedly evidencing sales and conveyances of real estate, but in fact intended to operate as a mortgage upon plaintiffs' homestead, as security for McCaskill and Graham; wherefore, plaintiffs prayed for cancellation and removal of said instruments as clouds upon their title.

About one year prior to December 3, 1929 (the date of the beginning of the transaction sought to be avoided), plaintiffs moved from Royse City, Rockwall county, to Collinsworth county, and settled near the town of Welling-

ton, where their son J. T. Hagar resided. The evidence indicates and the jury found, in answer to questions Nos. 1, 2, and 3, that plaintiffs had not abandoned their Royse City homestead (December 3, 1929) when conveyed by them to H. M. McCaskill, upon a recited consideration of $2,500—cash $1,500, and two vendor's lien notes for $500 each, due on or before November 1, 1930, and November 1, 1931, respectively. The record also discloses that a few days later (December 7, 1929) McCaskill and wife reconveyed this property to the Hagars, upon a recited cash consideration and a vendor's lien note for $1,050, executed by plaintiffs in favor of McCaskill.

- The answer of defendants McCaskill and Graham contains the general issues and special pleas, denying that the transactions were simulated, and, in a cross-action, asserted ownership of the note for $1,050, and sought judgment thereon against plaintiffs, with foreclosure of the vendor's lien upon the Royse City property.

Other issues submitted, and the answers of the jury thereto, are as follows:

"Question No. 4: Do you find from a preponderance of the evidence that the deed executed by J. M. Hagar and wife to H. M. McCaskill, dated Dec. 3rd, 1929, was not intended to convey title to the land in question, but was only intended to create a lien thereon to secure an indebtedness? Answer 'yes' or 'no.' We, the jury, answer No.

"Question No. 5: Do you find from a preponderance of the evidence that H. M. McCaskill and wife, on Dec. 7th, 1929, executed and delivered to J. M. Hagar and wife, a deed to the land in question retaining therein a vendor's lien to secure the note in the sum of $1050.00? Answer 'yes' or 'no.' We, the jury, answer Yes.

"Question No. 6: Do you find from a preponderance of the evidence that J. M. Hogar and wife executed and delivered the note for $1050.00 to H. M. McCaskill and R. E. Graham as a part of the consideration for the land in question? Answer 'yes' or 'no.' We, the jury, answer No.

"Question No. 7: Do you find from a preponderance of the evidence that the note for $1050.00 was executed by J. M. Hagar and wife and delivered to H. M. McCaskill and R. E. Graham to be returned to the maker without payment being made? Answer 'yes' or 'no.' We, the jury, answer No."

Each party moved for judgment, but the court sustained the motion of defendants, de-

nied plaintiffs recovery, and rendered judgment against them in favor of defendants on the cross-action for the full amount of the note, $1,050, interest and attorney fee, with foreclosure on the Royse City property.

No objection was made by plaintiffs to the charge of the court, but in their motion for judgment contended that the findings of the jury, properly construed, entitle them to judgment cancelling the instruments and removing same as clouds upon their title; and, at most, that the findings only authorized a personal judgment against plaintiff J. M. Hagar for debt, as evidenced by the note; also urged the alternative proposition that the findings were so contradictory, conflicting, and of such doubtful meaning as not to admit of the rendition of any judgment; hence insisted that the court should set the same aside and grant a new trial.

As will be observed, issue No. 4 submitted the opposing contentions of the parties as one question and in negative form, requiring an answer either "yes" or "no." We question the propriety of requiring a categorical answer to a duplicitous question, necessarily the answer will be more or less of a doubtful meaning; furthermore, we respectfully suggest the propriety of furnishing an appropriate formula for the answer, affirmative and negative, in instances where it is necessary to submit a question in negative form as in the instant case, so the jury in answering, and the court in reviewing the answer, may know for a certainty that a "yes" answer really means "yes," and is not susceptible of being construed "no," or vice versa.

It is evident that the trial court construed the findings in favor of defendants, but we are not convinced that they do not also admit of a construction authorizing judgment for plaintiffs. We think it entirely permissible to read answer No. 4 as a finding favorable to the contention of plaintiffs; such a construction would harmonize the answer to issue No. 4 with the answer to issue No. 6, to the effect that the note for $1,050, executed by the Hagars, was not given as a part of the consideration for the land reconveyed by McCaskill, and such construction would not be out of harmony with the idea of a personal liability on the note, which evidently was the thought of the jury, as revealed by their answer to issue No. 7, to the effect that the note was not to be returned to the makers without payment.

■ However that may be, we are clearly of opinion that answers to issues Nos. 5 and

6 are irreconcilable. Answer to issue No. 5 settled no controverted matter, simply found the existence of undisputed facts; that is, that the deed from McCaskill and wife to J. M. Hagar and wife, dated December 7, 1929, retained a vendor's lien to secure the note for $1,050. The deed was not in evidence, but its existence was not disputed; the vendor lien note, in the usual form, was in evidence and recited that: "This note is given in part payment for a certain lot or parcel of land situated in Rockwall County, Texas, and described as lots Nos. Seventeen and Eighteen (describing the lots in Royse City) this day conveyed to J. M. Hagar by H. M. McCaskill and wife, and to secure the payment of same, according to the tenor thereof, a vendor's lien is retained in said conveyance, and is hereby acknowledged * * *." So, in view of these undisputed facts, the jury could not have answered issue No. 5 other than they did. If, however, the answer be given the meaning imputed to it by defendants, and accepted by the trial court, i. e., that it was a finding against the contention of the plaintiffs, we think the conclusion inescapable that such construction renders the answer in conflict with answer to No. 6, immediately following, to the effect that the note was not given by Hagar and wife to McCaskill as a part of the consideration for the land in question. The latter finding is explicit, unambiguous, and on a vital controverted issue; hence it must follow, as a matter of law, that if the note did not represent unpaid purchase money, as found by the jury, no vendor's lien existed, and the foreclosure was unauthorized.

So, in view of the doubtful meaning of answers to question No. 4, and the obvious conflict between the answers to questions No. 5 (as construed by the trial court) and No. 6, we have reached the conclusion that no judgment can rest thereon, and that the court should have set the same aside and ordered a new trial. The decisions are numerous and unanimous in holding that a new trial will be granted when findings of the jury upon pertinent issues are so conflicting and irreconcilable that judgment cannot be based thereon. See 31 Tex. Jur. 60, § 53, and authorities cited.

The court rendered personal judgment against both Mr. and Mrs. Hagar on the $1,050 note. A personal judgment against Mrs. Hagar was not authorized by the facts.

Reversed and remanded.